UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CAROL JEAN PETERSON,<br><br>      Plaintiff,<br><br>v.<br><br>VALERIE DOWNING ARNOLD,<br><br>      Defendant. | Case No. 09-CV-0890 (PJS/RLE) |
| CAROL JEAN PETERSON,<br><br>      Plaintiff,<br><br>v.<br><br>WILLIAM O'HARA,<br><br>      Defendant. | Case No. 09-CV-0891 (PJS/RLE) |
| CAROL JEAN PETERSON,<br><br>      Plaintiff,<br><br>v.<br><br>DR. ANDERHOLM, Physician, Northern Psychiatric Associates, Baxter, MN,<br><br>      Defendant. | Case No. 09-CV-0892 (PJS/RLE) |
| CAROL JEAN PETERSON,<br><br>      Plaintiff,<br><br>v.<br><br>CANDACE SIMAR,<br><br>      Defendant. | Case No. 09-CV-0893 (PJS/RLE) |
| CAROL JEAN PETERSON,<br><br>      Plaintiff,<br><br>v.<br><br>PATRICIA AANES,<br><br>      Defendant. | Case No. 09-CV-0894 (PJS/RLE) |

| | |
|---|---|
| CAROL JEAN PETERSON, | Case No. 09-CV-0916 (PJS/RLE) |
| Plaintiff, | |
| v. | |
| DARRELL M. PASKE, | |
| Defendant. | |

| | |
|---|---|
| CAROL JEAN PETERSON, | Case No. 09-CV-0917 (PJS/RLE) |
| Plaintiff, | |
| v. | |
| PATRICIA GIMBEL, | |
| Defendant. | |

ORDER

Carol Jean Peterson, pro se.

Plaintiff Carol Jean Peterson was placed under an involuntary guardianship by a Minnesota court, and her guardian negotiated her divorce settlement.[1] Peterson is dissatisfied with the divorce settlement and with the fact that she is under a guardianship. Peterson has filed eight separate lawsuits in this Court in which she names as defendants various parties who played some role in the events surrounding her guardianship and her divorce. Peterson seeks to proceed *in forma pauperis* ("IFP") and thus filed an application for IFP status in each of her eight suits.

---

[1] Various papers filed by Peterson describe her as being under "guardianship and conservatorship." A "guardianship" is imposed on a person; a "conservatorship" is imposed with respect to a person's estate. *See* Case No. 09-CV-0890, Pl. Obj. at 23 [Docket No. 10]. Because Peterson was simultaneously placed under guardianship and conservatorship, the Court uses the terms "guardianship" and "guardian" as shorthand for Peterson's status and for the person appointed by the Minnesota courts to act in Peterson's stead.

Peterson's IFP applications were referred to Chief Magistrate Judge Raymond L. Erickson. In a Report and Recommendation ("R&R") dated May 7, 2009 and filed simultaneously in all eight of Peterson's suits, Judge Erickson recommended summarily dismissing the suits under 28 U.S.C. § 1915(e)(2)(B)(ii). Peterson filed objections to the R&R in seven of the eight suits.[2]

The Court has reviewed de novo those portions of the R&R to which Peterson objects, as required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). Although the Court agrees with Judge Erickson that Peterson's seven remaining suits should be dismissed, the Court's analysis differs somewhat from Judge Erickson's. In particular, Judge Erickson recommended dismissing Peterson's suits in part because he could not tell from Peterson's complaints what events her suits were based on. R&R at 6. Although Peterson's objections are disorganized and difficult to follow, those objections reveal the factual core of Peterson's suits. For the reasons that follow, under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismisses all of Peterson's claims for lack of subject-matter jurisdiction, for failure to state a claim, or for both. The Court adopts Judge Erickson's R&R to the extent that it is consistent with this opinion.

I. BACKGROUND

Peterson and her husband of over thirty-four years, James, separated in December 2007. Case No. 09-CV-0890, Pl. Obj. at 6-7 [Docket No. 10]. James subsequently filed for divorce in Ramsey County. *Id.* at 4. In January 2008, Peterson hired defendant Valerie Arnold to represent her in the divorce proceedings. *Id.* at 24.

---

[2]Peterson did not file an objection to the R&R in *Peterson v. DeMay*, Case No. 09-CV-0895. The Court therefore adopted the R&R and dismissed the case. Case No. 09-CV-0895, Order May 29, 2009 [Docket No. 5].

Peterson was seen at a psychiatric clinic early in June 2008. The attending physician, defendant Dr. David Anderholm, subsequently completed a statement in support of Peterson's guardianship in which he described her as "grossly delusional" and as suffering from "paranoid schizophrenia."[3] Case No. 09-CV-0892, Pl. Obj. at 4 [Docket No. 5]. Peterson disputes this diagnosis and describes various activities that she undertook in June 2008 that would seemingly have required her competence.[4] *Id.* at 9.

On June 12, 2008, Peterson stopped by Arnold's office to drop off instructions about Peterson's funeral. Case No. 09-CV-0890, Pl. Obj. at 24. Peterson says that she prepared the instructions at Arnold's request and that, when she dropped them off, she told Arnold's receptionist that she was not suicidal. *Id.* The next day, however, Arnold filed a petition in Crow Wing County seeking to have a guardian appointed for Peterson. Case No. 09-CV-0890, Pl. Obj. at 36-40.

---

[3]Peterson contends that Anderholm never personally examined her and that his statement in support of her guardianship is therefore fraudulent. Case No. 09-CV-0892, Pl. Obj. at 4 [Docket No. 5]. This contention is at the heart of Case No. 09-CV-0892 against Anderholm. In that case, Peterson asks the Court to "deem the Physician [statement] of Dr. Anderholm invalid" and to "[h]old Dr. Anderholm accountable for [Peterson's] expense of intended fraud by Attorn[eys] V. Arnold and Guardian, Simar." Case No. 09-CV-0892, Compl. at 3 [Docket No. 1].

[4]For instance, Peterson says that she hosted a dinner party, volunteered at various community events, and accompanied her neighbor's seven-year-old child to a school "Grandparents' Day." Case No. 09-CV-0892, Pl. Obj. at 9.

Peterson does, however, admit that she was diagnosed with bipolar disorder in August 2003, for which she took Seroquel. Case No. 09-CV-0892, Pl. Obj. at 6. Peterson also says that she was voluntarily hospitalized for three days in November 2004. *Id.*; Case No. 09-CV-0890, Docket No. 11-5 at 1. In a letter included as an exhibit in Peterson's filings, a third party asserts that Peterson was briefly hospitalized involuntarily two other times, once in 2003 and once in 2005. *Id.*

A few days later, when Peterson arrived unexpectedly at her son's house, her son called the police. Case No. 09-CV-0892, Pl. Obj. at 6. Peterson was taken to a nearby emergency room for evaluation, and law-enforcement personnel recommended that she be placed on a 72-hour hold. *Id.* Medical personnel found that Peterson did not meet the criteria for such a hold, and Peterson was discharged from the hospital.[5] *Id.* at 7.

Judge Kristine DeMay of Crow Wing County heard argument in September 2008 on the petition for guardianship that Arnold had filed in June.[6] Case No. 09-CV-0890, Pl. Obj. at 26; Case No. 09-CV-0891, Pl. Obj. at 2-3 [Docket No. 5]. Before the hearing, Arnold and two other lawyers — defendant William O'Hara, Peterson's court-appointed counsel, and defendant Patricia Aanes, an attorney hired by Arnold — urged Peterson to acquiesce to being placed under guardianship. *Id.* at 2-3. Peterson refused. *Id.* at 3.

After Peterson continued to object during the hearing, Arnold, O'Hara, and Aanes huddled for a private conversation. *Id.* Aanes then approached Judge DeMay, and the two of them left the courtroom together. *Id.* Judge DeMay then returned to the courtroom and ordered an emergency guardianship. *Id.* In December 2008, Judge DeMay appointed defendant Candace Simar as Peterson's guardian. Case No. 09-CV-0890, Pl. Obj. at 23. Peterson contends that by speaking privately with Arnold, O'Hara, and Aanes, Judge DeMay deprived Peterson of her right

---

[5]According to the medical record of this emergency-room visit, Peterson "never showed any signs of hostility and had no evidence of depression, psychoses, suicidal ideation, and was adamant about not harming herself or others." Case No. 09-CV-0892, Pl. Obj. at 7.

[6]Peterson sued Judge DeMay in case number 09-CV-0895. As noted above, the Court dismissed Peterson's suit against Judge DeMay on May 29, 2009 because Peterson did not object to the R&R in that case. Further, the Court agrees with Judge Erickson that Judge DeMay is entitled to judicial immunity. R&R at 9 n.2.

to participate in the guardianship hearing. Case No. 09-CV-0894, Compl. at 3 [Docket No. 1]. This contention is the main basis of Peterson's claims against O'Hara and Aanes. [7]

The day after the guardianship hearing, Arnold visited Peterson. Case No. 09-CV-0890, Pl. Obj. at 27. Peterson, apparently unhappy with Arnold's role in placing her under guardianship, told Arnold that she was fired.[8] *Id.* But Simar, as Peterson's guardian, countermanded Peterson's instruction and rehired Arnold to serve as Peterson's lawyer. *Id.* Also, at some point Simar hired another attorney, defendant Patricia Gimbel, to play some role in Peterson's guardianship proceeding. Peterson contends that Simar deprived Peterson of her right to fire her own attorney, and in her complaint against Arnold, Peterson asks the Court to retroactively enforce Peterson's firing of Arnold. Case No. 09-CV-0890, Compl. at 3 [Docket

---

[7] Peterson also alleges that O'Hara showed bias in communicating extensively with her soon-to-be ex-husband, but not with her, while O'Hara was ostensibly representing her. Case No. 09-CV-0891, Compl. at 3 [Docket No. 1]. In her complaint against O'Hara, Peterson asks the Court to "state that 09/19/08 hearing [was] unethical [and] invalid" and to declare that O'Hara violated her privacy. *Id.*

Peterson also contends that Aanes wrongfully distributed Peterson's confidential financial information to various family members without Peterson's permission. Case No. 09-CV-0894, Pl. Obj. at 3 [Docket No. 5 ]. In her complaint against Aanes, Peterson asks the Court to "deem the 09/19/08 hearing unethical [and] a violation of [her] rights to a proper hearing." Case No. 09-CV-0894, Compl. at 3.

[8] In a letter to Arnold's law partner in December 2008, Peterson explained why she fired Arnold as follows: "I hired Arnold as a Divorce Attorney, she backstabbed me, and was hellbound [sic] in petitioning a Guardianship/Conservatorship." Case No. 09-CV-0890, Pl. Obj. at 45.

No. 1].⁹ In her complaint against Simar, Peterson asks the Court to dismiss Simar and to restore Peterson to competency. Case No. 09-CV-0893, Compl. at 3 [Docket No. 1].

In mid-November 2008, roughly two months after the guardianship hearing, Peterson moved to Wisconsin to stay with friends. Case No. 09-CV-0893, Pl. Obj. at 56 [Docket No. 5]. Sometime later, Simar wrote to Peterson's treating psychiatrist in Wisconsin, Dr. Linda Kollross, saying to that Peterson should be returned to Minnesota.¹⁰ *Id.* at 44.

After evaluating Peterson, Kollross said on January 8, 2009 that Peterson was competent. Case No. 09-CV-0916, Pl. Obj. at 36 [Docket No. 5] (letter from Kollross saying that "[a]t this time, our office feels that you are competent and you are able to handle your own affairs"). A neurologist, Dr. Soren Ryberg, also wrote a letter in January 2009 attesting to Peterson's competence. Case No. 09-CV-0893, Pl. Obj. at 8 (letter from Ryberg saying that "[i]t is my opinion that Ms[.] Peterson is competent to manage her own affairs"). Peterson contends that

---

⁹Specifically, in her complaint against Arnold, Peterson asks for the following relief:
> Allow firing of Arnold retroactive to 6/11/08 and allow me to have a new divorce proceeding without P. Gimbel, Arnold, Aanes, and Simar participating. Rule the court hearing of 9/11/08 held in Crow Wing "not valid" since the attorn[eys and] Judge DeMay did not allow me to fully partake and be a part of attorn[eys' and] Judge['s] *secret* conversation during hearing.

Case No. 09-CV-0890, Compl. at 3 (emphasis in original).

¹⁰Simar wrote, "[Peterson] is under civil commitment and ran away from her supervised apartment setting. I am in the process of trying to get her picked up and returned to Minnesota. . . . While I am happy that [Peterson] is seeing you for ongoing care I am most unhappy that she is in Wisconsin." Case No. 09-CV-0893, Pl. Obj. at 44.

Simar interfered with her receipt of Kollross's letter "so that Simar could *gain more profit* and drain my *assets*." *Id.* at 3 (emphasis in original); *see also id.* at 57.[11]

Sometime between November 2008 and early January 2009, Peterson hired Jennifer O'Neill of the Lommen Abdo law firm to assist Peterson in her efforts to be restored to capacity. *See* Case No. 09-CV-0916, Pl. Obj. at 10. But in a letter to O'Neill dated January 16, 2009, Gimbel (Simar's lawyer) told O'Neill that Peterson already had a lawyer for her guardianship (i.e., O'Hara) and that Simar did not plan to hire another one. Case No. 09-CV-0917, Pl. Obj. at 7-8 [Docket No. 5]. O'Neill continued to work on Peterson's behalf for another two months. *See id.* at 11-12. O'Neill withdrew as Peterson's counsel on March 25, 2009, saying that she could tell that Peterson was not pleased with her work. *Id.* at 12. O'Neill noted: "I believe that the other attorneys have acted unprofessionally and inappropriately. They seem more intent on protecting themselves than protecting you." *Id.*

At some point between the imposition of Peterson's guardianship in September 2008 and March 2009, Peterson filed petitions in Crow Wing County court for restoration of capacity and for a change of venue to Ramsey County. *See* Case No. 09-CV-0890, Docket No. 11-1 at 2-3; *id.*, Docket No. 11-4 at 7-10; Case No. 09-CV-0917, Pl. Obj. at 13. A hearing on the petitions was initially scheduled for March 23, 2009, but the hearing was rescheduled twice, first to March 26 and then to April 22. Case No. 09-CV-0917, Pl. Obj. at 14-15. Peterson contends that

---

[11]In May 2009, Dr. Charles E. Crutchfield apparently signed a statement titled "Physician Statement in Restoration to Capacity" that says: "Carol J. Peterson is coherent, not incapacitated, and I recommend restoration to full capacity immediately." Case No. 09-CV-0893, Pl. Obj. at 9. Although this statement is dated May 14, 2009, it bears a note (apparently in Peterson's handwriting) saying "also 1/12/09 by Charles Crutchfield, M.D." *Id.* Peterson contends that Simar interfered in January 2009 with her receipt of a statement supporting her competency made on January 12, 2009 by Crutchfield. *Id.* at 57.

the hearing was moved so that Arnold and Simar could "abuse" Peterson's assets and negotiate her divorce settlement without her involvement. *Id.* at 15.

Peterson did not appear at the hearing on April 22, 2009. Case No. 09-CV-0890, Docket No. 11-4 at 9. A week later, Judge DeMay issued an order denying Peterson's petition for restoration to capacity and rejecting her alternative request for a change of venue. *Id.* at 7-10.

According to Peterson, the outcome of the April 22 hearing was predetermined. She contends that Simar, Gimbel, O'Hara, Arnold, Aanes, Judge DeMay, her ex-husband James, and James's lawyer all conspired against her to prevent her restoration to capacity. Case No. 09-CV-0917, Pl. Obj. at 16. As evidence, Peterson points to an telephone conversation in early April 2009 in which James allegedly told one of Peterson's friends that Simar was going to transfer Peterson's guardianship to Lutheran Social Services. *Id.* at 16-17. Peterson says that James's statement proves that Judge DeMay had already decided, before the April 22 hearing, not to lift Peterson's guardianship. *Id.*[12]

Peterson's divorce was finalized on May 6, 2009. *See* Case No. 09-CV-0890, Pl. Obj. at 4. Arnold and Simar negotiated the divorce settlement on Peterson's behalf. *Id.* James was awarded the family home in White Bear Township. *Id.* at 13. James was also awarded the Petersons' Brainerd house, subject to the requirement that he sell it and then pay Peterson $126,100, plus one-half of any proceeds over $126,100. *Id.* at 12-13. Peterson and James split various bank and retirement accounts, and James was ordered to pay $2,133 per month to Peterson in spousal maintenance. *Id.* at 12.

---

[12]Judge DeMay's order, however, said: "The Court will not consider a motion to restore capacity, where Ms. Peterson fails to attend the hearing." Case No. 09-CV-0890, Docket No. 11-4 at 9.

Peterson contends that she was defrauded through the divorce decree. Case No. 09-CV-0890, Docket No. 11-3 at 12-13. For instance, Peterson says that Simar intentionally omitted at least one account from the divorce decree and misstated the balance on others. *Id.* at 13; Case No. 09-CV-0890, Pl. Obj. at 2-3, 10. Peterson also says that although James received real property plus over $800,000 from various accounts, she received only around $350,000 (plus the promised proceeds from the sale of the Brainerd house) and has not received her furniture, appliances, and other personal property. Case No. 09-CV-0890, Docket No. 11 at 3-4.

Peterson also contends that the divorce decree is illegitimate because Arnold did not keep her adequately informed about the divorce proceedings for about eight months, from September 2008 through May 2009. Case No. 09-CV-0890, Pl. Obj. at 25. Peterson says that two hearings in the divorce proceedings, one in mid-January 2009 and another in mid-February 2009, were held without her.[13] Case No. 09-CV-0890, Docket No. 11-3 at 6, 12. Peterson also says that she was not properly notified of a hearing about the sale of the Brainerd home. Case No. 09-CV-0890, Docket No. 11 at 6.

## II. DISCUSSION

Peterson seems to ask the Court to remedy three types of wrongs. First, she contends that she was wrongly placed under guardianship. She asks the Court to restore her to capacity or, alternatively, to transfer her guardianship proceedings to Ramsey County. *See* Case No. 09-CV-0893, Compl. at 3; Case No. 09-CV-0916, Compl. at 3 [Docket No. 1]. Second, Peterson contends that she was deprived of her right to participate in her divorce proceedings. Third, she

---

[13]In a letter to Peterson in late February 2009, Gimbel said that some pretrial hearings tackled procedural issues and were held by telephone to save attorney's fees and guardian costs, not to exclude Peterson. Case No. 09-CV-0917, Pl. Obj. at 9. Gimbel told Peterson that she thought that Peterson knew about the early February hearing and could have attended it. *Id.*

contends that her court-appointed guardian, Simar, and other defendants abused Peterson's rights in connection with the divorce proceedings by, for instance, mishandling funds. Peterson asks the Court to nullify her divorce decree and to allow her to renegotiate a divorce settlement without the involvement of Aanes, Arnold, Gimbel, and Simar. *See* Case No. 09-CV-0890, Compl. at 3. Peterson also asks for monetary damages. Case No. 09-CV-0916, Compl. at 3; Case No. 09-CV-0917, Compl. at 3 [Docket No. 1].

At the core of all of Peterson's suits is the guardianship that was imposed by a Minnesota court. To the extent that Peterson seeks to have that guardianship lifted or to have those proceedings transferred, her claims are barred by the so-called *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Peterson complains that the state-court judgment imposing a guardianship upon her caused her an injury — the loss of her capacity to act on her own behalf — and she seeks review and rejection of that judgment. This is precisely what the *Rooker-Feldman* doctrine prohibits.

Further, to the extent that Peterson asks the Court to vacate her divorce decree, her claims are likewise barred by the *Rooker-Feldman* doctrine. Peterson complains of injury from the divorce decree and ask the Court to review and reject it. The Court does not have power to do so.

Finally, even if the *Rooker-Feldman* doctrine did not bar Peterson's claims, it is apparent from her complaints and her objections that she cannot prevail on her claims under 42 U.S.C. § 1983 against six of the seven defendants. Section 1983 claims can be brought only against

persons who acted "under color of" state law — that is, so-called state actors. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 49-50 (1988). But four defendants — Arnold (Peterson's divorce lawyer), Anderholm (a doctor), Aanes (an attorney retained by Arnold), and Gimbel (an attorney retained by Peterson's guardian, Simar) — are purely private citizens. Two defendants — Simar (Peterson's guardian) and O'Hara (a court-appointed attorney) — were appointed by a Minnesota court to their positions, but court-appointed guardians and attorneys are not generally state actors for purposes of § 1983. *See, e.g.*, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Taylor v. First Wyoming Bank, N.A.*, 707 F.2d 388, 390 (9th Cir. 1983) (holding that a guardian is not a state actor). Because none of these six defendants is a state actor, Peterson fails to state a claim against them under § 1983.

One defendant, Darrell Paske, appears to work for Crow Wing County as a court administrator. Case No. 09-CV-0916, Compl. at 3. The Court will therefore assume that Paske is a state actor for purposes of § 1983. But as far as the Court can tell, Peterson's claims against Paske are all based on her allegations that her guardianship and divorce proceedings were unfair. Because the *Rooker-Feldman* doctrine bars Peterson's challenges to those proceedings, her claims against Paske are likewise barred.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the Court OVERRULES the objections of plaintiff Carol Jean Peterson to Chief Magistrate Judge Raymond L. Erickson's May 7, 2009 Report and Recommendation. The Court ADOPTS IN

PART that Report and Recommendation to the extent that it is consistent with this Order.

Accordingly, IT IS HEREBY ORDERED THAT:

1. With respect to cases 09-CV-0890, 09-CV-0891, 09-CV-0892, 09-CV-0893, 09-CV-0894, and 09-CV-0917:

    a. Peterson's application in each case for leave to proceed *in forma pauperis* is DENIED.

    b. To the extent that Peterson challenges her guardianship or her divorce decree, Peterson's claims in each case are DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

    c. To the extent that Peterson brings claims under 42 U.S.C. § 1983 that are separate from her challenges to her guardianship or her divorce decree, Peterson's claims in each case are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. With respect to case 09-CV-0916:

    a. Peterson's application for leave to proceed *in forma pauperis* is DENIED.

    b. Peterson's complaint is DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 10, 2009         s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge